**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

KENNETH L. BONNER, SR.,
        *Plaintiff-Appellant,*

v.

BRUCE DAWSON; TERRY BISHOP,
        *Defendants-Appellees.*

No. 04-1440

Appeal from the United States District Court
for the Western District of Virginia, at Harrisonburg.
Glen E. Conrad, District Judge.
(CA-02-65-GEC)

Argued: February 1, 2005

Decided: April 14, 2005

Before MICHAEL and DUNCAN, Circuit Judges,
and Robert E. PAYNE, United States District Judge
for the Eastern District of Virginia,
sitting by designation.

---

Affirmed by published opinion. Judge Duncan wrote the opinion, in
which Judge Michael and Judge Payne joined.

---

**COUNSEL**

**ARGUED:** Robert Neal Cook, WHITHAM, CURTIS & CHRISTOF-
FERSON, P.C., Reston, Virginia, for Appellant. Phillip Stone Griffin,
II, PHILLIP S. GRIFFIN, II, P.C., Winchester, Virginia, for Appel-
lees. **ON BRIEF:** Michael E. Whitham, WHITHAM, CURTIS &

CHRISTOFFERSON, P.C., Reston, Virginia, for Appellant. Peter Thomas Hansen, PHILLIP S. GRIFFIN, II, P.C., Winchester, Virginia, for Appellees.

---

**OPINION**

DUNCAN, Circuit Judge:

Plaintiff Kenneth Bonner brought this action in the United States District Court for the Western District of Virginia, seeking to recover so-called "infringer's profits" under 17 U.S.C. § 504(b) for the infringement of his copyrighted work. After a trial on the issue of damages, in which the jury awarded Bonner $10,707 in actual damages but no infringer's profits, Bonner filed a Rule 50(b) motion for judgment as a matter of law. Because we find that substantial evidence exists to support the jury's verdict, we affirm the order of the district court denying Bonner's motion.

I.

Most of the relevant facts are undisputed. Kenneth Bonner is a self-employed architect and the owner of Bonner Metropolitan Architectural Group in Reston, Virginia. In 1998, Bonner was hired by the American Woodmark Corporation ("Woodmark") to select a site for and design the company's new customer service center. After looking at various sites, Bonner recommended to Woodmark that it build its service center on a parcel of land owned by Dawson Investments ("Dawson"). Dawson entered into a lease agreement with Woodmark and hired Terry Bishop to perform the construction work necessary for the development of the new center.

Bonner drafted a design proposal for the new building, and this proposal became the basis for the building's final design. After Woodmark accepted Bonner's design, the parties agreed to a contract in which Bonner would be paid seventy dollars an hour for his architectural services. This agreement resulted in a final fee of $35,690. While the contract did not contain a specific section articulating which of the two parties owned the rights to the design, each page of

the design proposal bore a Kenneth Bonner copyright seal. Bishop and his subcontractors erected the building based upon these design blueprints. At that point the relationship between Bonner and Woodmark, Dawson and Bishop ended.

Pleased with the customer service center constructed by Bishop, Woodmark contacted Dawson to request the construction of a second building immediately adjacent for use as the company's computer center. Woodmark requested that the second building be similar in color and style to the first, but that it be a bit larger and have a distinct interior floor plan. Dawson agreed to build the second building and, once again, hired Bishop for the construction. However, no one notified or contacted Bonner. Dawson and Bishop both acknowledged to the district court that Bonner's design was used as the basis for the second building, but they nevertheless did not contact him or any other architect. The second building was completed in December, 2001.

After driving past the original building, Bonner noticed that a second building, the computer center, had been built immediately adjacent with a design that seemed identical to the first. Suspecting a possible copyright violation, Bonner submitted his set of drawings for the first building to the United States Copyright Office. Bonner's copyright was registered on April 10, 2002. He then filed a complaint in the United States District Court for the Western District of Virginia on July 22, 2002, alleging copyright infringement in violation of the Architectural Works Protection Act of 1990 ("AWCPA"), 17 U.S.C. § 102(a). Specifically, Bonner requested that he be deemed the rightful copyright owner of the design of the second building and that Dawson and Bishop be required to pay actual damages and lost "infringer's profits" under 17 U.S.C. § 504(b). (JA 9004).

The matter was referred to a magistrate judge for proposed findings of fact, conclusions of law, and a recommended disposition. On August 21, 2003, the magistrate judge granted in part and denied in part Bonner's motion for summary judgment. He held that Bonner possessed a valid copyright on the design of the first building based on the copyright notice attached to all design documents he submitted to the defendants during the process. The magistrate judge further found that the copyright was violated, relying in part on the testimony

of the defendant's own expert that the two buildings were "substantially similar." He determined that while additional facts were needed to determine the scope of Bonner's actual damages under § 504(b), Bonner's claim for infringer's profits was barred as a matter of law because no causal link could be found between Dawson and Bishop's profits and the copyright infringement.

Both parties then requested a review of the magistrate judge's ruling by the district court. On October 14, 2003, the district court granted the plaintiff's motion for summary judgment on the issue of liability for substantially the same reasons as those relied upon by the magistrate judge. However, he declined to adopt the magistrate judge's recommendation on the issue of damages. The district court agreed with the magistrate judge that the actual damages issue should be tried to a jury, but also held that facts could still be found to allow recovery of infringer's profits as well. The district court determined that it was possible for Bonner to prove that some portion of Dawson and Bishop's profits was attributable to the infringement. After a trial solely on the issue of damages, a jury awarded Bonner actual damages in the amount of $10,707, but found that he was not entitled to infringer's profits.

Following trial, Bonner filed motions in district court for a new trial and judgment as a matter of law under Federal Rules of Civil Procedure 59 and 50(b), respectively. The court denied the Rule 59 motion, holding that Bonner had not satisfied the requirement for a new trial based on new evidence, the only one of the three grounds for a Rule 59 motion that Bonner had pled. The court also denied the Rule 50(b) motion for Judgment as a Matter of Law on two grounds. First, the court held that Bonner had the burden of showing a causal link between the infringement and the profits incurred, a link that the jury could have reasonably determined he had not shown. Second, even if such a link were found, the court held that the jury could have reasonably determined that Dawson and Bishop satisfied their burden to show that the profits were derived from sources other than the infringement. Bonner appeals the court's decision on his Rule 50(b) motion, but did not appeal the denial of his motion for a new trial. It is thus only the limited question as to whether Bonner is entitled to judgment as a matter of law that we now review.

## II.

We review the denial of a motion for judgment as a matter of law de novo. *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002). Because the issue of defendants' liability has been determined by the district court and was never appealed, the only question before us is whether Bonner is entitled to receive infringer's profits under the Copyright Act as a matter of law.[1]

Section 504(b) of the Copyright Act entitles a successful copyright plaintiff to recover any "actual damages" suffered by him and "any profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504(b). The statute creates a burden-shifting provision, stating:

> "[i]n establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."

*Id.* Thus, as in this case, once liability has been shown, § 504(b) creates an initial presumption that the infringer's "profits . . . attributable to the infringement" are equal to its gross revenue. *See Konor Enters., Inc. v. Eagle Publ'ns, Inc.,* 878 F.2d 138, 140 (4th Cir. 1989). Once the copyright owner establishes the gross revenue, the burden shifts to the infringer to show that its revenue was "attributable to factors other than the copyrighted work." *Id.* (quoting Section 504(b)).

In meeting its initial burden, however, a copyright holder must show more than the infringer's total gross revenue from all of its profit streams. We have previously determined that a literal interpretation of "gross revenue" in § 504(b) to include all profits produced by an infringer, no matter the source, would be incorrect. *Bouchat v.*

---

[1]The limited nature of this appeal did not seem apparent to the Appellees, who spent much of their brief and oral argument attempting to attack Bonner's qualifications as an architect and argue the dissimilarities between the two designed buildings. Neither of these issues is before us on appeal.

*Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 520-22 (4th Cir. 2003). Rather, "gross revenue" refers only to revenue reasonably related to the infringement. *Id.* at 521. The copyright owner thus has the burden of demonstrating some causal link between the infringement and the particular profit stream before the burden-shifting provisions of § 504(b) apply. *Id.*

The district court found that no such connection existed here, holding that Bonner had produced no evidence "that defendants' gross revenues were causally connected to the infringement of plaintiff's architectural designs." (JA 9048). The court acknowledged that Bonner had presented evidence that Dawson and Bishop had built and leased the building at issue, and that the profit stream established by Bonner derived from the building itself. Nevertheless, the court found this evidence was not sufficient to satisfy the "causal connection" requirement articulated in *Bouchart*, because it was not clear that the basis for the profits was the particularized design of the building. In doing so, however, the court misinterpreted the level of connection between infringement and profits that is required under *Bouchart*. Bonner produced evidence of the profits generated by the leasing agreements in the infringed building. This amount was derived exclusively from the infringed building; no other source contributed to the generated funds. The building generating the funds was designed based upon Bonner's copyright. This is sufficient to satisfy *Bouchart*'s requirement of a "causal connection" between the infringement and the profit stream.

In *Bouchart*, we were concerned about the holder of a copyright of the Baltimore Ravens logo being able to recover from profit streams that had little or nothing to do with the franchise's logo, such as those generated by media rights and game-day parking. *Bouchart*, 346 F.3d at 523. We held that these "non-merchandise" revenues had no conceivable connection to the logo printed on team apparel, and thus were not part of the "gross revenue" intended under § 504(b). *Id.* Here, the profits at issue are not generated by outside sources, but by money collected from the use of the specific infringed work. To require Bonner to show more of a connection than this in order to satisfy his burden would be to effectively eliminate the burden-shifting provision of § 504(b) and place the entire burden on the copyright holder. This was not the intent of *Bouchart* or § 504(b).

Thus, the district court erred in concluding that Bonner did not meet his burden of establishing the required causal connection under § 504(b) as a matter of law. However, Bonner asks us to find that he not only met his preliminary burden, but also that he is entitled to judgment as a matter of law on the question of Dawson and Bishop's ability to show that their profits were derived from sources other than the infringement. This we cannot do.

In order to prevail on a Rule 50(b) motion, the court must determine "without weighing the evidence or considering the credibility of the witnesses, that substantial evidence does not support the jury's findings." *S. Atl. Ltd. P'ship of Tennessee L.P. v. Riese*, 284 F.3d 518, 532 (4th Cir. 2002) (internal quotes omitted). A court should only grant such a motion if it determines that "the only conclusion a reasonable trier of fact could draw from the evidence is in favor of the moving party." *Figg*, 312 F.3d at 635. Once Bonner met his burden under § 504(b), it was incumbent upon Dawson and Bishop to show that their profits were "attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Dawson and Bishop presented a great deal of evidence to the jury that could have led to such a determination. For example, there is testimony in the record from Woodmark that it would have wanted the building built and would have gone forward with the lease even if a different facade had been used. Various witnesses testified that the company was primarily concerned about the need for additional space, and that the focus was on the interior design and setup of the building.

A reasonable trier of fact could have concluded that the basis of the profits that Dawson and Bishop obtained from the construction and leasing of the building was unrelated to the exterior design provided by Bonner, and rather reflected other concerns. There is enough evidence in the record to support a determination that Dawson and Bishop satisfied their § 504(b) burden and thus to support the jury's verdict.

In reviewing a Rule 50(b) motion we simply determine whether substantial evidence supports the jury's verdict. We conclude here that it does.[2] The order of the district court is

---

[2]The fact that Bonner's appeal was limited to his Rule 50(b) motion has circumscribed our remedy. Had Bonner also appealed the denial of

*AFFIRMED*.

his Rule 59 motion for a new trial, he might have argued that due to the district court's incorrect determination that Bonner had not sustained his § 504(b) burden as a matter of law, he was entitled to a new trial. Because it is possible that the jury did not even reach the question of whether defendants had evidence that their profits were attributable to factors other than the infringement, and instead mistakenly concluded that Bonner did not sustain his initial burden, a new trial might have been appropriate.