IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 21, 2007

Charles R. Fulbruge III
Clerk

No. 06-10760

THOMAS ALLEN POWELL, doing business as Architecture Unlimited

Plaintiff-Appellant

v.

STEVEN J PENHOLLOW; PENHOLLOW CUSTOM HOMES LLC

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:04-CV-1744

Before REAVLEY, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:[*]

Before us is an appeal by the plaintiff in a successful copyright infringement suit of the magistrate judge's award of damages. At issue is whether the magistrate judge erred by admitting evidence of the defendants' allocated overhead expenses, apportioning only 1% of the defendants' profits as damages, concluding that the plaintiff suffered no actual damages, and failing to award prejudgment interest. Because the magistrate judge's admission of the defendants' evidence of overhead expenses was improper under the Federal

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Rules of Evidence, we VACATE a portion of the award of damages and REMAND for a new trial on damages consistent with this opinion.

## I. FACTUAL BACKGROUND

Plaintiff-Appellant Thomas Allen Powell ("Powell") is a licensed architect in Texas who has done architectural work in the past for Defendant-Appellee Penhollow Custom Homes, L.L.C. ("Penhollow"). Penhollow is owned in part by Defendant-Appellee Steven J. Penhollow ("Steven Penhollow") (collectively, "Defendants"). In late 2003, Steven Penhollow contacted Powell about preparing plans for a house for a couple by the name of Brooks based on a house previously designed by Powell. Powell prepared several drafts of plans for the Brookses and submitted them to Defendants. In January 2004, after sending his most recent architectural drawings to Defendants, Powell took a vacation and never heard from Defendants regarding the plans again. At that time, the plans were not yet complete and required more work before a house could be built from them.

As determined by the magistrate judge in the bench trial of this matter, Steven Penhollow took the plans prepared by Powell, sketched them out as his own, and gave them to Roberto Castanheira ("Castanheira"), a different architect, who completed them. The final design was substantially similar to the plans prepared by Powell. Defendants then built the Brooks residence based on the plans completed by Castanheira. These findings, which form the basis of the magistrate judge's conclusion that Defendants infringed Powell's copyright in his drawings, have not been challenged by Defendants on appeal.

Unaware that Defendants were constructing the Brooks residence using substantially similar plans, Powell sent Defendants an invoice in May 2004 for $1900 for the services Powell had performed in drafting the preliminary plans. Powell had already received a $1000 retainer from Defendants, bringing the total amount Powell charged the Defendants for his work to $2900. Defendants did not respond to the payment demand. In June 2004, Powell visited the

Brooks residence and noticed the similarity between the house and his architectural drawings. Powell then filed a suit in small claims court to recover the unpaid fees from Defendants and ultimately obtained a default judgment for $1900, which Defendants have since satisfied. Powell also applied for and received a copyright on his drawings in July 2004.

## II. PROCEDURAL HISTORY

Powell filed the instant copyright infringement suit against Defendants in the Northern District of Texas on August 11, 2004, seeking damages for the infringement of his copyright as well as an injunction to prevent Defendants from using the plans in the future. The parties agreed to a bench trial before a magistrate judge, which occurred on April 18, 2006. The magistrate judge issued written findings of fact and conclusions of law on June 1, 2006, in which he found that Defendants had infringed Powell's copyright and that Powell was entitled to damages of $564.40, which was less than what Powell requested but greater than what Defendants had urged. The magistrate judge entered a judgment to that effect, and Powell appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291 (2000), as a final judgment has been entered.

## III. DISCUSSION

On appeal, Powell argues that the magistrate judge erred in several respects by only awarding $564.40 in damages. Damages for copyright infringement are governed by 17 U.S.C. § 504. Subsection (b), which is the applicable damages provision in this case, states as follows:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b). Powell's damages, thus, consist of his actual damages plus the amount of profits Defendants received that are attributable to the infringement.

In this case, the magistrate judge determined that Powell had not proved any actual damages. The magistrate judge also ruled that the profits of Defendants that were attributable to their infringement of Powell's copyright amounted to $564.40. Powell challenges these rulings, as well as the magistrate judge's failure to award him any prejudgment interest.

A.    Profits Attributable to the Infringement

Powell's initial arguments on appeal are that the magistrate judge erred in determining Defendants' Net Profits and in apportioning only 1% of those profits to Powell's work. In deciding what profits were attributable to Defendants' infringement, the magistrate judge did not describe his methodology; however, the parties agree on the general two-step formula for determining the profits. First, the parties calculate the amount of net profits realized on the Brooks residence, and second, the parties apportion the net profits between those profits that were due to the infringement and those profits that were not.

Beginning with the calculation of net profits, the formula used by the parties is fairly simple. The parties take the Total Revenue for the Brooks residence and subtract the Direct Costs in order to come up with the Gross Profits.[1] From the Gross Profits, the parties subtract the Direct Overhead and the Allocated Overhead to arrive at the Net Profits.[2] As the copyright owner, Powell bears the burden of putting on evidence of Defendants' gross revenue

---

[1] Direct Costs are the costs directly associated with building the Brooks residence, such as costs for materials and labor.

[2] Direct Overhead expenses are those overhead expenses directly associated with the Brooks residence, while Allocated Overhead is a percentage of Penhollow's general overhead expenses that are not directly associated with any particular building project.

attributable to the infringement. See Thoroughbred Software Int'l, Inc. v. Dice Corp., 488 F.3d 352, 360 (6th Cir. 2007); Bonner v. Dawson, 404 F.3d 290, 294 (4th Cir. 2005). The burden then shifts to Defendants to produce evidence of deductible expenses. See Thoroughbred, 488 F.3d at 360; Bonner, 404 F.3d at 294. Thus, Defendants bear the burden of showing the amounts that may be deducted from the Total Revenue.

Here, the parties agree that the Total Revenue was $950,660.41—the amount Defendants received for the Brooks residence. However, the parties disagree about the remaining numbers. Defendants assert that their Direct Costs were $837,672.15, leading to a Gross Profit of $112,788.26. Defendants then claim that their Direct Overhead expenses were $41,280.76 and their Allocated Overhead expenses were $56,810.85, resulting in a Net Profit of $14,696.65. Powell, on the other hand, presented David Pugh ("Pugh") as an expert witness to testify that Defendants were duplicating some of their expenses in their Direct Costs and Direct Overhead. Therefore, at trial, Powell urged the magistrate judge to conclude that Direct Costs were $806,390.05, Direct Overhead was $31,019.89, and Allocated Overhead was $56,810.85. These amounts give a Gross Profit of $144,270.36 and a Net Profit of $56,439.62. On appeal, Powell further asserts that there should have been no deduction of Allocated Overhead because the evidence of Allocated Overhead was inadmissible. If Allocated Overhead is not included in Powell's calculation, the Net Profits become $113,250.47.

In his findings of fact and conclusions of law, the magistrate judge determined that Defendants' Gross Profits amounted to $112,788.26, which is the amount set forth by Defendants. Although the magistrate judge did not state an amount of Net Profits, using the parties' logic and reversing the calculations from the ultimate damages award, the magistrate judge apparently

determined that there were Net Profits of $56,439.62, which is in line with Pugh's calculations.[3]

Once the Net Profits are calculated, the second step is to determine what portion of the Net Profits are attributable to Defendants' infringement. Here, the magistrate judge apparently apportioned 1% of Defendants' Net Profits as attributable to the infringement, resulting in an award of $564.40. Although the magistrate judge never stated that he was using a 1% apportionment, it was the method suggested by Defendants at trial. In short, Powell testified that he would normally charge $10,151.25 for his architecture services ($1.25 per square foot), which is approximately 1% of the Total Revenue for the Brooks residence. As urged by Defendants, if 1% of the Total Revenue goes toward architecture services, then 1% of the Net Profits is due to Defendants' infringement of Powell's architectural work. One percent of $56,439.62 is $564.40—the amount of damages awarded by the magistrate judge.

On appeal, Powell argues that the magistrate judge erred at both steps of the analysis—first, by admitting evidence of Defendants' Allocated Overhead, and second, by using only a 1% apportionment. We will address each argument in turn.

---

[3] By using Defendants' calculation of Gross Profits and Pugh's calculation of Net Profits, the magistrate judge's award appears inconsistent. Use of those amounts means that the magistrate judge implicitly found that the Direct and Allocated Overhead expenses amounted to $56,348.64, which is not an amount that either party argued was appropriate.

1.    Admissibility of Allocated Overhead Evidence

Powell's first argument on appeal is that the magistrate judge erroneously admitted evidence of Defendants' Allocated Overhead expenses.  At issue is a spreadsheet contained in the last two pages of Exhibit 43 that details Defendants' Allocated Overhead.   Powell claims that this evidence is an inadmissible summary under Rule 1006 of the Federal Rules of Evidence, improper opinion testimony, and inadmissible hearsay.   We review the admission of evidence for an abuse of discretion.  Triple Tee Golf, Inc. v. Nike, Inc., 485 F.3d 253, 265 (5th Cir. 2007).  If an abuse of discretion has occurred, we apply the harmless error doctrine to determine if a substantial right of the complaining party was affected.  Id.

Exhibit 43, which contains the spreadsheet at issue, is a multi-page document that was produced by Defendants.  The first page shows Defendants' calculation of Net Profits by using the Total Revenue, Direct Costs, Gross Profits, Direct Overhead, and Allocated Overhead.  Following the first page, Defendants attached Penhollow's check register, which shows the amounts and recipients of all of the checks written for the Brooks residence.  The sum of the checks in the check register is approximately the amount Defendants claim as their Direct Costs.  The last two pages of Exhibit 43 contain a spreadsheet that shows the Direct and Allocated Overhead expenses.

The magistrate judge admitted Exhibit 43 over the objection of Powell, based on testimony by Steven Penhollow.  Steven Penhollow testified that Exhibit 43 was prepared by his father, who was retired but kept the books for Penhollow.  According to Steven Penhollow, the Allocated Overhead was an estimate of Penhollow's annual overhead divided by the number of projects on which Penhollow was working.  He also stated that the spreadsheet was essentially something printed out of a computer, based on numbers that had previously been entered.  The magistrate judge admitted Exhibit 43, but stated

that "[t]he court will give it such credit as it deserves in the way of accuracy and so forth."

Powell asserts that the Allocated Overhead spreadsheet included on the last two pages of Exhibit 43 is an inadmissible summary of Allocated Overhead evidence under Rule 1006 of the Federal Rules of Evidence. Rule 1006, which governs the admission of summary evidence, states as follows:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at [a] reasonable time and place. The court may order that they be produced in court.

We have previously held that the failure to make the original or duplicate copies of the evidence underlying a summary available for inspection renders the summary inadmissible. See Hackett v. Housing Auth., 750 F.2d 1308, 1312 (5th Cir. 1985). Other circuit courts follow the same rule. See United States v. Miller, 771 F.2d 1219, 1238 (9th Cir. 1985); United States v. Kim, 595 F.2d 755, 764 (D.C. Cir. 1979) ("When the underlying documents are not subject to examination by the opposing parties, the summary should not be admitted into evidence.") (internal citations omitted).

Powell asserts that the portion of the spreadsheet concerning Allocated Overhead is an inadmissible summary because Defendants never produced the documents underlying the amounts on the spreadsheet despite Powell's request. Review of the transcript and history of the case shows that the only document Defendants produced to substantiate their Allocated Overhead is the spreadsheet contained in Exhibit 43. There is no evidence in the record that any other documentation was ever produced by Defendants. Thus, while it appears that Defendants produced some documentation to back up their claims regarding Direct Costs and Direct Overhead, there is no underlying documentation to support their Allocated Overhead claims. Consequently, under Rule 1006, the

spreadsheet that summarized Defendants' Allocated Overhead expenses was inadmissible and the magistrate judge abused his discretion in admitting it.[4]

Because the admission of the spreadsheet was improper, we must consider whether the error was harmless. See Triple Tee Golf, 485 F.3d at 265. The spreadsheet was the only evidence presented by Defendants of their $56,810.85 in Allocated Overhead expenses. Consequently, the admission of the spreadsheet clearly prejudiced Powell, as the Net Profits calculation would have been much higher if the Allocated Overhead expenses had not been considered. Therefore, we must vacate the portion of the damages award concerning Defendants' profits and remand this case for a new trial on damages consistent with this opinion.[5]

2.    Apportionment of Profits

Although we are partially vacating the award of damages and remanding for a new trial, we will briefly address Powell's other contentions on appeal in an effort to clarify any remaining legal issues prior to the new trial. Powell next argues that the district court erred in determining the amount of Defendants' Net Profits attributable to the infringement of Powell's copyright. Specifically, Powell contends that the magistrate judge should not have apportioned 1% of Defendants' Net Profits to Powell's work, but instead should have awarded Powell the entire amount of Net Profits because Defendants did not meet their burden of showing that a 1% apportionment was proper. See Nelson-Salabes, Inc. v. Morningside Dev., L.L.C., 284 F.3d 505, 511-12 n.9 (4th Cir. 2002) (stating

---

[4] It is also unclear whether Defendants laid the proper predicate for the admission of a summary under Rule 1006. See United States v. Duncan, 919 F.2d 981, 988 (5th Cir. 1990) (requiring a showing that the documents underlying a summary are voluminous and that in-court examination would be inconvenient before summary evidence is admissible). Because the evidence was improperly admitted for other reasons, we need not address this issue.

[5] Because the spreadsheet was inadmissible under Rule 1006, we do not need to decide whether the spreadsheet constituted improper opinion testimony or inadmissible hearsay.

that "all gross revenue is presumed to be profit 'attributable to the infringement,' unless the infringer is able to demonstrate otherwise").

This court reviews legal conclusions underlying an award of damages de novo and findings of fact regarding damages for clear error. Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc., 414 F.3d 546, 552 (5th Cir. 2005). Absent an error of law, if the damages award is plausible in light of the record, we will not reverse the award, even if we would have come to a different conclusion. Dresser-Rand Co. v. Virtual Automation, Inc., 361 F.3d 831, 843 (5th Cir. 2004); see also Bruce v. Weekly World News, Inc., 310 F.3d 25, 32 (1st Cir. 2002) (reviewing damages apportionment for abuse of discretion). As described earlier, 17 U.S.C. § 504(b) puts the burden on Defendants to prove the "elements of profit attributable to factors other than the copyrighted work." Powell claims that Defendants failed to introduce evidence that a 1% apportionment was appropriate.[6]

The Supreme Court in Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390, 400-06 (1940), held that apportionment is appropriate when the evidence shows that not all of the infringer's profits are the result of the infringement. The Court elaborated, though, that mathematical exactness when apportioning profits was not required, but that only a reasonable approximation was necessary. Id. at 408. However, the Court did state that "[w]here there is a commingling of gains, [the infringer] must abide the consequences, unless he can make a separation of the profits so as to assure to the injured party all that justly belongs to him," id. at 406, which indicates that the infringer must meet some burden of establishing a just apportionment.

---

[6] Again, to obtain the 1% figure, the magistrate judge apparently reasoned that because the cost of the architectural work was 1% of the Total Revenue, then the amount of profits attributable to Powell's work (and Defendants' infringement of it) is 1% of Net Profits.

This court has not addressed the Supreme Court's holding in Sheldon or apportionment in general. Other courts have emphasized the role of equity and fairness in making an apportionment decision. See Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1176 (1st Cir. 1994) ("[Apportionment] is ultimately a delicate exercise informed by considerations of fairness and public policy . . . ."); see also Sheldon, 390 U.S. at 408 ("Equity is concerned with making a fair apportionment . . . ."). The Eighth Circuit has also held that it is improper to rely exclusively on a quantitative analysis without considering other factors that play a role in the relative importance of the infringement. See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 886 F.2d 1545, 1548 (8th Cir. 1989). In Frank Music Corp., the Eighth Circuit considered an award of 10% of profits as damages when one act of a ten-act performance constituted infringement. Id. The court determined that the 10% award was reasonable, not because one of the ten acts was an infringement, but because the district court implicitly concluded that all portions of the show were of equal value and that, therefore, a 10% award was appropriate. Id. at 1548-49.

In this case, there was testimony that work unrelated to Defendants' infringement went into building the Brooks residence. As noted by both sides, Powell's drawings were incomplete and required further revisions before a building permit could even be obtained. Therefore, not all of Defendants' Net Profits are attributable to the infringement. However, while Defendants may have shown that apportionment is required, Powell questions how much of the Net Profits should be apportioned and whether Defendants met their burden in that regard.

Without knowing what prompted the magistrate judge to choose a 1% apportionment, it is unclear to us whether the magistrate judge weighed the facts and equity in this case or simply defaulted to the simple mathematical calculation proposed by Defendants without reference to other important factors.

It is entirely possible that the facts do support a 1% apportionment; however, because the magistrate judge will be retrying the issue of Defendants' profits, it will be appropriate for him to revisit the apportionment issue as well and perhaps more fully explain his reasoning.

## B. Actual Damages

Powell next asserts that the magistrate judge erred when he found that Powell was not entitled to actual damages because Powell had already received full payment for his work. As noted earlier, we review legal conclusions underlying an award of damages de novo and findings of fact regarding damages for clear error. Nat'l Hispanic Circus, 414 F.3d at 552.

Here, the magistrate judge referenced Powell's receipt of $2900 for his work and specifically found that "Powell suffered no actual damages because Powell sued for and recovered the fair market value of [his architectural drawings]." Powell, however, claims that the district court should have awarded him an additional $7,251.25 in actual damages, which is the difference between the amount Powell testified he would have received for the plans for the Brooks residence had he been able to complete them ($10,151.25) and the amount he was already paid ($2900).

Powell relies on Eales v. Environmental Lifestyles, Inc. for the proposition that actual damages are "what a willing buyer would have been reasonably required to pay a willing seller" for the infringed work. 958 F.2d 876, 880 (9th Cir. 1992) (internal quotation marks omitted). In Eales, the defendant infringed the plaintiff-architect's plans that she had completed for another company. Id. at 878. The architect received an amount equal to the worth of her completed drawings as actual damages. Id. at 880. Thus, in Eales, the architect had actually completed her architectural drawings when they were infringed by a third company who had never paid for any of her work. Here, Powell had only completed a few preliminary drafts, and another architect was required to finish

12

the drawings before they could be used to build a house. Indeed, it is undisputed that Powell has been paid in full for the amount of work he did in making the preliminary drafts for the Brooks residence.

Although Powell testified as to what a willing buyer might have paid him for completed plans, Powell has not presented evidence of what a willing buyer would have been reasonably required to pay a willing seller for his incomplete plans, other than his testimony that he charged $2900 for his work. Consequently, we cannot say that the magistrate judge erred when he declined to award any actual damages.

C.    Prejudgment Interest

Finally, Powell claims that the magistrate judge erred when he did not award prejudgment interest on Powell's damages. The decision of whether to award prejudgment interest is reviewed under an abuse of discretion standard. Jauch v. Nautical Servs., Inc., 470 F.3d 207, 214 (5th Cir. 2006) (per curiam).

When a cause of action arises out of a federal statute, federal law governs the award of prejudgment interest—both as to its allowance and its rate. Carpenters Dist. Council v. Dillard Dep't Stores, Inc., 15 F.3d 1275, 1288 (5th Cir. 1994). The determination of whether prejudgment interest should be awarded is a two-step analysis: "does the federal act creating the cause of action preclude an award of prejudgment interest, and if not, does an award of prejudgment interest further the congressional policies of the federal act." Id. If prejudgment interest can be awarded under this analysis, whether such interest is awarded in any given case is within the district court's discretion. Id.

Here, the Copyright Act does not contain any reference to prejudgment interest. See 17 U.S.C. § 504. Consequently, prejudgment interest is not precluded, and we may proceed to the second step in the analysis—whether an award of prejudgment interest would further the congressional policies behind

the Copyright Act. Other circuit courts have split on this issue,[7] but we need not reach it today. Instead, we believe it best to allow the magistrate judge to have another opportunity to address the issue during the retrial of the damages issues identified above. Once the facts and damages are properly determined, the magistrate judge may use his discretion to determine whether an award of prejudgment interest is appropriate.

## IV. CONCLUSION

Because the magistrate judge erred in admitting evidence of Defendants' Allocated Overhead expenses, we VACATE the portion of the damages award concerning Defendants' profits attributable to the infringement, as well as the award of no prejudgment interest. We REMAND this case for a new trial on damages consistent with this opinion.

VACATED as to damages and REMANDED.

---

[7] The First Circuit has held that it is not an abuse of discretion for a district court to fail to award prejudgment interest in a copyright infringement case, and the Sixth Circuit has ruled that prejudgment interest is not available under the Copyright Act. John G. Danielson, Inc. v. Winchester-Conant Props., Inc., 322 F.3d 26, 51 (1st Cir. 2003); Robert R. Jones Assocs., Inc. v. Nino Homes, 858 F.2d 274, 282 (6th Cir. 1988). The Seventh, Ninth, and Tenth Circuits, however, have all determined that the Copyright Act permits an award of prejudgment interest. Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 716-18 (9th Cir. 2004); McRoberts Software, Inc. v. Media 100, Inc., 329 F.3d 557, 572-73 (7th Cir. 2003); Kleier Adver., Inc. v. Premier Pontiac, Inc., 921 F.2d 1036, 1041-42 (10th Cir. 1990).