**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-1534**

QUANTUM SYSTEMS INTEGRATORS, INCORPORATED, a Nevada
Corporation,

             Plaintiff - Appellee,

        v.

SPRINT NEXTEL CORPORATION, a Kansas Corporation,

             Defendant - Appellant.

**No. 08-1585**

QUANTUM SYSTEMS INTEGRATORS, INCORPORATED, a Nevada
Corporation,

             Plaintiff - Appellant,

        v.

SPRINT NEXTEL CORPORATION, a Kansas Corporation,

             Defendant - Appellee.

Appeals from the United States District Court for the Eastern
District of Virginia, at Alexandria. Liam O'Grady, District
Judge. (1:07-cv-00491-LO-TCB)

Argued: May 14, 2009                    Decided: July 7, 2009

Before SHEDD and DUNCAN, Circuit Judges, and Frederick P. STAMP, Jr., Senior United States District Judge for the Northern District of West Virginia, sitting by designation.

---

Affirmed in part, reversed in part, and remanded by unpublished opinion. Judge Duncan wrote the opinion, in which Judge Shedd and Senior Judge Stamp joined.

---

**ARGUED:** Michael J. Songer, CROWELL & MORING, LLP, Washington, D.C., for Sprint Nextel Corporation, a Kansas Corporation. James J. Merek, MEREK, BLACKMON & VOORHEES, LLC, Alexandria, Virginia, for Quantum Systems Integrators, Incorporated, a Nevada Corporation. **ON BRIEF:** Clifton S. Elgarten, Clyde E. Findley, CROWELL & MORING, LLP, Washington, D.C., for Sprint Nextel Corporation, a Kansas Corporation. David H. Voorhees, MEREK, BLACKMON & VOORHEES, LLC, Alexandria, Virginia, for Quantum Systems Integrators, Incorporated, a Nevada Corporation.

---

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Quantum Systems Integrators, Inc. ("Quantum") sued Sprint Nextel Corp. ("Sprint"), alleging claims for copyright infringement based on the loading of Quantum's software onto the RAM of thirteen Sprint computers. After a jury trial, the district court awarded Quantum actual damages of $69,000 for eight infringing computers. The district court also awarded Quantum almost $400,000 in attorney's fees and costs. Both parties now cross-appeal. For the reasons that follow, we affirm in part, reverse in part, and remand for reconsideration.

## I.

In 1997, Sprint licensed software from Quantum for use on several hundred Sprint computers. The software performed data-monitoring functions, such as recording the keystrokes of Sprint employees logging into Sprint's computer network. In 2004, Sprint switched providers and began replacing Quantum's software with software from another vendor. Quantum sued Sprint in 2005 for unauthorized use of its software on Sprint computers. The parties settled the suit on August 7, 2006, and Sprint agreed to stop using Quantum's software within 60 days of the parties' settlement agreement.

In 2007, Quantum sued Sprint again, asserting claims for copyright infringement and fraud. The suit was prompted by Quantum's receipt of "autoreporting" messages indicating that the Quantum software remained on some Sprint computers and was being loaded into these computers' RAM when the computers were turned on or rebooted. Discovery revealed that Quantum's software remained on a handful of Sprint computers after the parties' 2006 settlement agreement. There is no evidence in the record, however, that any Sprint employee deliberately accessed the Quantum software for a business-related purpose after October 7, 2006, the date by which Sprint agreed to stop using Quantum's software. Several computers had unconfigured copies of the software that no Sprint employees ever accessed. On two other computers, Sprint engineers inadvertently accessed Quantum's software while remotely logging into Sprint's network.

The district court granted summary judgment in favor of Sprint on Quantum's fraud claim, finding that although Sprint may have been negligent in failing to remove Quantum's software from its computers, there was no evidence that Sprint had entered into the settlement agreement with the intent not to discontinue use of the Quantum software. The district court also granted summary judgment in favor of Sprint on Quantum's claim for a portion of Sprint's profits as damages. Noting that

4

Quantum's software automatically loaded on only six computers and that the software merely provided a "bridge or transport mechanism" to another program with its own security features, the district court found that Quantum had not shown a connection between its software on the Sprint computers and Sprint's revenues.  J.A. 427.

Quantum's remaining claim for copyright infringement went to trial.  Before the case was submitted to the jury, the district court granted Sprint's motion for judgment as a matter of law ("JMOL") on the issue of willful infringement, finding that Sprint's conduct had not been willful.  The jury found that the software on nine computers infringed Quantum's copyright, but the district court granted Sprint's JMOL motion as to one of these nine computers, known as "ferrari1."  The district court found that ferrari1 did not infringe Quantum's copyright because it had been stored in a closet during the infringement period and never turned on, and therefore had never created infringing RAM copies.

With respect to the eight computers for which liability was found, Quantum opted for actual damages.  The jury awarded Quantum the software license fee ($8,700) for each infringing computer, for a total of $69,000 in damages.  Quantum later

5

sought $381,705 in attorney's fees and $17,292.41 in costs, which the district court summarily granted.

Both parties now appeal. Quantum appeals the district court's grant of summary judgment in favor of Sprint, as well as the district court's decision to grant Sprint's JMOL motion as to the "ferrari1" computer. Sprint seeks to reverse the jury verdict and appeals the district court's award of costs and attorney's fees. We address the parties' claims in turn.

## II.

Quantum challenges the district court's decision to grant summary judgment in favor of Sprint on several issues, including Quantum's claim for damages based on Sprint's profits; the relevant time period for infringement; and Quantum's fraud claim. We review a district court's grant of summary judgment de novo. Jennings v. Univ. of N.C., 482 F.3d 686, 694 (4th Cir. 2007) (en banc) (citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 283 (4th Cir. 2004) (en banc)). Each of Quantum's claims is discussed separately below.

## A.

First, Quantum appeals the district court's grant of summary judgment in favor of Sprint on Quantum's claim for a portion of Sprint's profits. In rejecting Quantum's claim for

6

profits under 17 U.S.C. § 504, the district court stated that to recover lost profits, "Quantum Systems must make a showing that the revenue derived only from the infringing activity." J.A. 426. Arguing that the district court applied the wrong standard, Quantum contends that it need not show that Sprint's profits derived solely from the infringement of Quantum's software. Rather, Quantum asserts that it should be entitled to a portion of Sprint's profits if it can show that those profits "are attributable to use of the copyright owner's work in addition to other factors." Quantum's Br. at 36. Because, as Quantum argues, it "established that the heart of Sprint's wireless telecommunications network . . . infringed Quantum's copyrights," Quantum contends that it is entitled to a portion of Sprint's profits. Id. at 37.

Title 17 U.S.C. § 504 allows a copyright owner to recover either "actual damages and any additional profits of the infringer," or statutory damages. If the copyright owner elects to recover actual damages, section 504(b) states:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and

7

> the elements of profit attributable to factors other than the copyrighted work.

Based on this language, Quantum argues that it "was entitled to a presumption that all of Sprint's gross revenues from its infringing network are recoverable as profits attributable to the infringement."  Quantum's Br. at 37.

Quantum's arguments slightly miss the mark.  Although Quantum asserts that "the heart of Sprint's wireless telecommunications network . . . infringed Quantum's copyrights," Quantum's Br. at 37, this assertion is not enough to entitle Quantum to a portion of Sprint's profits.  To the contrary, we have held that any profits awarded as damages for copyright infringement must be "reasonably related to the infringement."  Bonner v. Dawson, 404 F.3d 290, 294 (4th Cir. 2005) (citation omitted).  A copyright owner "has the burden of demonstrating some causal link between the infringement and the particular profit stream before the burden-shifting provisions of § 504(b) apply."  Id.  A district court may therefore grant summary judgment in favor of an alleged copyright infringer on the issue of profits awarded as damages "if either (1) there exists no conceivable connection between the infringement and those [profits]; or (2) despite the existence of a conceivable connection, [the copyright owner] offered only speculation as to the existence of a causal link between the infringement and the

8

[profits]." Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522-23 (4th Cir. 2003).

Although the district court may have articulated an incorrect legal standard for evaluating Quantum's claim for a portion of Sprint's profits as damages, we nevertheless affirm the district court's judgment. The record shows -- and Quantum does not dispute -- that the infringement of Quantum's software in this case consisted of RAM copies that were automatically generated whenever an infringing computer was turned on or rebooted. The record also shows that none of Sprint's employees had in fact knowingly used the software for its intended purpose during the infringement period. Even considering these facts in the light most favorable to Quantum, we find that Quantum has failed to demonstrate that any of Sprint's profits were "reasonably related to" the automatically generated RAM copies. Bonner, 404 F.3d at 294. The district court correctly concluded that Quantum is not entitled to a portion of Sprint's profits as damages.

B.

Quantum also argues that the district court erred in finding that the infringement period began on October 7, 2006, the date by which Sprint agreed to stop using Quantum's software, instead of on August 7, 2006, the date on which the

9

parties entered into the settlement agreement. Quantum asserts that under the parties' agreement, "use" includes the loading of Quantum's software into a computer's RAM, such that any such RAM loads occurring on Sprint computers between August 7 and October 7, 2006 qualified as "use" and constituted a material breach of the settlement agreement. Quantum argues that "[b]ecause Sprint materially breached the Settlement Agreement, Sprint could not avail itself of the sixty-day grace period set forth in the Settlement Agreement." Quantum's Br. at 38. Sprint responds that "[t]here was no requirement in the settlement agreement that Sprint remove the software from its computers" and that the presence of the software on Sprint computers "would not amount to a breach of contract." Sprint's Reply Br. at 3.

Quantum's arguments are not persuasive. As Sprint points out, the settlement agreement required Sprint to stop using the software, which it materially did. Indeed, the record reflects that the number of functioning Sprint computers that had Quantum software loaded on their hard drives dropped from almost two hundred, at the peak of Sprint's use, to fewer than ten. Although two Sprint employees inadvertently accessed the Quantum software while logging into the Sprint network in order to work with another software program, we find that such "use" does not qualify as a material breach that warrants holding Sprint liable

10

for copyright infringement from the date of the agreement. The district court did not err in finding that the infringement period began on October 7, 2006.

C.

Lastly, Quantum argues that the district court should not have granted summary judgment on its fraud claim because Quantum showed a fact issue as to whether Sprint entered into the settlement agreement with the intent not to stop using Quantum's software. Quantum points to "autoreporting" logs in the record showing that Sprint's computers were running Quantum's software on January 1, 2005, and asserts that there is nothing in the record showing that Sprint took steps to ensure that these computers would stop running Quantum's software on or after August 7, 2006, the date of the settlement agreement. Quantum asserts that this failure to act, combined with Sprint's representation that "it had taken all actions necessary to perform its obligations" under the settlement agreement, shows a fact issue as to Sprint's allegedly fraudulent intent. Quantum's Br. at 47.

Quantum's arguments overstate the evidence. As noted above, the record shows that the number of Sprint computers with Quantum's software saved on their hard drives decreased from almost two hundred at the peak of Sprint's use of the software

11

to fewer than ten after the settlement's deadline for Sprint to discontinue use. Furthermore, evidence that Quantum software was loaded into certain Sprint computers' RAM does not, without more, show that Sprint was actively and intentionally using the software in violation of the settlement agreement. Because Quantum failed to show a fact issue as to whether Sprint intended to violate the settlement, the district court did not err in granting Sprint summary judgment on Quantum's fraud claim.[1]

---

[1]Quantum also challenges the district court's denial of its motion to compel discovery of previously withheld documents. The district court found that these documents were privileged, but Quantum argues that Sprint waived privilege through the testimony of its in-house counsel, which Sprint used in its summary judgment motion. Quantum asserts that Sprint volunteered its counsel's testimony and that Sprint's questions of its counsel were sufficiently broad to constitute waiver of attorney-client privilege and work-product privilege.

Quantum's arguments lack merit. The record clearly shows that the magistrate judge decided to "allow [Quantum] to take [Sprint's counsel's] deposition on a very limited basis" -- that is, "whether or not he received information from outside counsel that related to [the autoreporting logs], as well as to this, the [Quantum] software still being loaded onto the servers in 2005 and 2006." J.A. 103-04. The questions that Quantum argues constitute a waiver remain well within these parameters, asking whether Sprint's in-house counsel "ever receive[d] information from outside counsel showing that the [Quantum] software was still being used" or "ever receive[d] any auto reporting messages that showed to you that the [Quantum] software was still being used." J.A. 126. Sprint did not elect to present its counsel as a witness and therefore did not waive privilege with respect to matters covered in his testimony. Cf. United States v. Nobles, 422 U.S. 225, 239-40 (1975).

III.

Both parties appeal decisions that the district court made concerning Sprint's motions for judgment as a matter of law during the trial. Quantum challenges the district court's decision to grant Sprint's JMOL motion on whether the computer "ferrarri1" infringed Quantum's copyright. Sprint challenges the district court's denial of its JMOL motion as to the issue of copyright infringement. We review de novo the district court's denial of a motion for judgment as a matter of law. Int'l Ground Transp., Inc. v. Mayor of Ocean City, 475 F.3d 214, 218 (4th Cir. 2007). We address the parties' claims in turn.

A.

"Ferrari1" is a computer that Sprint claims was in storage and never turned on during the infringement period. Quantum argues that the district court erred in granting Sprint's 50(b) motion on ferrari1 because the court made an improper credibility determination and placed undue weight on testimony from Thomas D. Smith that changed during the course of the litigation. Quantum points out that in his deposition, Smith testified that ferrari1 had been running during the infringement period, but at trial he testified that ferrari1 had been turned off and put in storage. Quantum's Br. at 41-42. Sprint responds that the judge did not make a credibility

13

determination, but instead properly found that "the evidence was not sufficient to support the jury's verdict as to ferrari1." Sprint's Reply Br. at 49. In addition, Sprint points out that Quantum provided no evidence to contradict Smith's trial testimony.

"Judgment as a matter of law is proper when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." Price v. City of Charlotte, N.C., 93 F.3d 1241, 1249 (4th Cir. 1996) (quotation and citation omitted). Although the district court may have improperly weighed Smith's credibility, we nevertheless affirm the district court's judgment because the evidence does not support a finding of infringement for ferrari1. As Sprint points out, Quantum received no autoreporting messages showing that ferrari1 was on and running Quantum's software after October 7, 2006. Furthermore, Quantum presented no evidence at trial showing that ferrari1 was ever turned on during the infringement period. The district court did not err in finding that the absence of autoreporting logs, combined with Smith's testimony and Quantum's failure to provide any evidence as to ferrari1's status during the infringement period, could not support the jury verdict.

14

Sprint argues that the district court erred in denying its JMOL motion and sustaining the jury's finding of infringement because there was no evidence that Sprint engaged in "volitional copying." Relying heavily on CoStar Group, Inc. v. LoopNet, Inc., 373 F.3d 544 (4th Cir. 2004), Sprint argues that "copying [under the Copyright Act must] be volitional" and "the nature and duration of the use [must] be more than transitory." Sprint's Br. at 28. Quantum responds that Sprint's "use" of its software infringed Quantum's copyright because it violated the settlement agreement.

Sprint overstates the "volitional" requirement purportedly established by CoStar. Although CoStar did involve RAM copies, that case concerned a copyright holder suing an Internet Service Provider ("ISP") for providing services used by third parties to upload infringing photographs to the Internet. In CoStar, we found that the ISP provided "electronic infrastructure . . . designed and managed as a conduit of information and data," 373 F.3d at 550, such that "the owner and manager of the conduit hardly 'copies' the information and data," id. at 552, in violation of section 106 of the Copyright Act. "[I]n the context of the conduct typically engaged in by an ISP," we found that the Copyright Act requires "some aspect of volition and

meaningful causation -- as distinct from passive ownership and management of an electronic Internet facility." Id. at 550. We ultimately held:

> At bottom, we hold that ISPs, when passively storing material at the direction of users in order to make that material available to other users upon their request, do not 'copy' the material in direct violation of § 106 of the Copyright Act. Agreeing with the analysis in [Religious Technology Center v. Netcom On-Line Communication Services, Inc., 907 F. Supp. 1361 (N.D. Cal. 1995)], we hold that the automatic copying, storage, and transmission of copyrighted materials, when instigated by others, does not render an ISP strictly liable for copyright infringement under §§ 501 and 106 of the Copyright Act.

Id. at 555.

Relying on CoStar, Sprint argues that it "undertook no volitional action" in making the RAM copies, Sprint's Br. at 30, and therefore did not copy Quantum's software in violation of the Copyright Act. CoStar, however, is inapposite. This case does not involve third-party copyright infringement or the "automatic copying, storage, and transmission of copyrighted materials . . . instigated by others." CoStar, 373 F.3d at 555. Nor does it involve a defendant that engages in "conduct typically engaged in by an ISP." Id. at 550. To the contrary, this case concerns copying that, at bottom, was instigated by Sprint's own employees. Unlike an ISP, who has no control over the content that its users upload to the Internet, Sprint's

16

original loading of the software onto its computers was volitional. Each copy of the Quantum software was within Sprint's control and the actions of Sprint's employees (in rebooting the computers) are attributable to Sprint. Although Sprint correctly points out that the parties' settlement agreement did not require Sprint to delete or otherwise remove the Quantum software from Sprint's computers, Sprint was nevertheless less than diligent in ensuring that its computers would not load Quantum's software into RAM after the parties' settlement agreement. The fact that Sprint's computers generated copies and loaded these copies into RAM automatically does not absolve Sprint of liability for copyright infringement.

Sprint also argues that the RAM copies were transitory and not sufficiently fixed to constitute an infringing copy. Although this circuit has not yet directly addressed whether RAM copies can infringe, the Ninth Circuit's MAI Systems opinion is the leading case on the issue and holds that RAM copies are sufficiently fixed for purposes of copyright law. MAI Systems Corp. v. Peak Computer, Inc., 991 F.2d 511 (9th Cir. 1993). Numerous district courts and at least two of our sister circuits have followed MAI Systems in holding that the loading of copyrighted software into RAM creates an infringing copy. See, e.g., Stenograph L.L.C. v. Bossard Assoc., Inc., 144 F.3d 96,

17

101-02 (D.C. Cir. 1998); NLFC, Inc. v. Devcom Mid-Am., Inc., 45 F.3d 231, 235 (7th Cir. 1995).  But see Cartoon Network LP, LLLP v. CSC Holdings, Inc., 536 F.3d 121, 127-28 (2d Cir. 2008) (interpreting MAI Systems to hold only that "loading a program into a computer's RAM can result in copying that program," and not that, "as a matter of law, loading a program into a form of RAM always results in copying").  Indeed, in CoStar we noted that copyrighted software saved onto a computer "no longer remains transitory" because "it may be used to serve the computer or the computer owner."  373 F.3d at 551 (emphasis added).  Although we acknowledge that Sprint engineers never deliberately accessed the Quantum software for any business purpose after the parties' settlement agreement, we find that in this case the RAM copies were sufficiently fixed for purposes of copyright infringement.[2]

We affirm the district court's decision to deny Sprint's JMOL motion as to copyright infringement and affirm the award of actual damages.

---

[2]Sprint also argues on appeal that the district court erred in instructing the jury because the court failed to define the "volitional conduct" and "fixed for more than a limited duration" elements of infringement under CoStar.  As noted above, Sprint places more weight on CoStar than it can bear. The district court did not abuse its discretion in instructing the jury as it did.

IV.

Finally, we turn to the district court's award of attorney's fees and costs to Quantum under 17 U.S.C. § 505, which grants district courts discretion to "allow the recovery of full costs" and "a reasonable attorney's fee" to the prevailing party in a copyright action.  Sprint challenges the district court's award of attorney's fees on both procedural and substantive grounds.  First, Sprint argues that the district court abused its discretion by failing both to conduct an inquiry into the reasonableness of Quantum's requested fees and to explain its reasons for awarding fees.  Second, Sprint argues that the Copyright Act is not an automatic recovery statute and that Quantum should not be awarded fees under the discretionary factors noted in Fogerty v. Fantasty, Inc., 510 U.S. 517 (1994).  Quantum responds that the attorney's fees award should not be overturned because the award was not "clearly wrong" under the Fogerty factors.  Quantum's Br. at 66.

In Fogerty v. Fantasy, Inc., the Supreme Court addressed what standards should inform a court's discretion under section 505 and adopted an "evenhanded" approach under which prevailing plaintiffs and defendants "are to be treated alike."  510 U.S. 517, 534 n.19 (1994).  "[A]ttorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion."

19

<u>Id.</u>  The <u>Fogerty</u> Court acknowledged that "[t]here is no precise rule or formula for making these determinations," but noted several factors that courts may consider.  <u>Id.</u> (citation omitted).  Relying on <u>Fogerty</u>, we adopted the following factors for considering an award of attorney's fees:

> (1) the motivation of the parties;
>
> (2) the objective reasonableness of the legal and factual positions advanced;
>
> (3) the need in particular circumstances to advance considerations of compensation and deterrence; and
>
> (4) any other relevant factor presented.

<u>Rosciszewki v. Arete Assocs., Inc.</u>, 1 F.3d 225, 234 (4th Cir. 1993).  We review a district court's decision on the appropriateness of an award of attorney's fees and costs under 17 U.S.C. § 505 for an abuse of discretion.  <u>Diamond Star Bldg. Corp. v. Freed</u>, 30 F.3d 503, 506 (4th Cir. 1994).

In this case, the district court's order awarding fees stated:

> Plaintiff's Motion for Attorneys' Fees . . . is GRANTED.  In accordance with 17 U.S.C. § 505 and the Supreme Court's guidance in <u>Fogerty v. Fantasy, Inc.</u> . . . , the Court finds that the Plaintiff's request for attorneys' fees in the amount of $391,705 is reasonable, and hereby awards attorneys' fees in that amount.

J.A. 529. We are unable to determine from the order whether the district court considered any of the Rosciszewki factors in awarding fees to Quantum.

Because of the conclusory nature of the order, we are constrained to vacate the award of fees and costs and remand for reconsideration. Although we do not seek to circumscribe the district court's judgment on remand, we do note that Quantum achieved minimal success in this lawsuit, and that the awarded attorney's fees are almost five times its award of actual damages. Moreover, the $69,000 awarded in damages represents far less than either the $1,000,000 Quantum originally sought in actual damages or the $450,000 Quantum sought in statutory damages. See Hensley v. Eckerhart, 461 U.S. 424, 436 (1983) (cited in Fogerty, 510 U.S. at 534, and noting that if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount"). Although the fees seem disproportionate in light of the relatively small amount of damages awarded, we are unable to review the district court's discretion because it has not articulated the basis for its decision. In Diamond Star, we reversed a district court's denial of a motion for attorney's fees under section 505 when the district court acknowledged the

21

Rosciszewki factors, but summarily concluded that "its discretion is best exercised in this case by refusing to award fees." 30 F.3d at 506. Similarly, the district court here cited Fogerty in awarding fees, but without more we are unable to evaluate whether the district court abused its discretion in applying the Rosciszewki factors.

We therefore reverse the award of fees and costs and remand for reconsideration.

V.

For the reasons stated above, the judgment of the district court is

AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED.
