# United States Court of Appeals
## For the First Circuit

Nos. 21-1645, 21-1691

D'PERGO CUSTOM GUITARS, INC.,

Plaintiff, Appellant, Cross-Appellee,

v.

SWEETWATER SOUND, INC.,

Defendant, Appellee, Cross-Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Landya B. McCafferty, U.S. District Judge]

Before

Kayatta and Howard, Circuit Judges,
and Walker, District Judge.<sup>*</sup>

Robert E. Allen, with whom Lawrence M. Hadley, Thomas P. Burke Jr., and Glaser Weil Fink Howard Avchen & Shapiro, LLP were on brief, for appellant/cross-appellee.
Edward J. Sackman, with whom Richard C. Gagliuso, Lauren M. Pritchard, and Bernstein, Shur, Sawyer & Nelson, P.A. were on brief, for appellee/cross-appellant.

July 30, 2024

---

<sup>*</sup> Of the District of Maine, sitting by designation.

**HOWARD, <u>Circuit Judge</u>.** This appeal stems from a lawsuit brought by D'Pergo Custom Guitars, Inc., against Sweetwater Sound, Inc., over a photo that Sweetwater used on its website. D'Pergo brought claims alleging, in relevant part, copyright infringement under the Copyright Act, trademark infringement under the Lanham Act, and a violation of the New Hampshire Consumer Protection Act ("CPA"). On cross-motions for summary judgment, the district court granted summary judgment to Sweetwater on the trademark claim and to D'Pergo on the copyright claim. The district court then held a simultaneous bench and jury trial, where the court found in favor of Sweetwater on the CPA claim and a jury determined that, on the copyright claim, D'Pergo was entitled to approximately $75,000 in compensatory damages. The jury based its damages award on findings that D'Pergo could recover the actual damages it suffered but could not recover the portion of Sweetwater's profits that D'Pergo claimed were earned by virtue of the infringement.

The parties now bring a medley of challenges to the proceedings below. D'Pergo appeals the district court's grant of summary judgment to Sweetwater on the trademark claim and the district court's bench trial ruling in favor of Sweetwater on the CPA claim. Further, D'Pergo contends that erroneous jury instructions warrant the reversal of the jury's finding that D'Pergo was not entitled to recover any of Sweetwater's profits. According to D'Pergo, the district court's instructions

- 2 -

(1) misstated D'Pergo's burden of proof and (2) should have included a "commingling" instruction. Sweetwater's cross-appeal also takes issue with the copyright damages, which, in Sweetwater's view, rest on inadmissible expert testimony.[1]

We affirm in part, reverse in part, and remand in part. Specifically, we affirm the district court's ruling in favor of Sweetwater on D'Pergo's CPA claim. But we reverse its grant of summary judgment to Sweetwater on D'Pergo's trademark claim. Furthermore, we remand for a new jury trial on the issue of infringing profits for the copyright claim; although the district court correctly denied D'Pergo's requested "commingling" instruction and did not err in admitting the testimony of D'Pergo's expert witness, we think its instruction did not accurately state D'Pergo's burden of proof. Our reasoning follows.

## I. BACKGROUND

Because the district court's orders in this case set forth a clear and comprehensive background of the relevant facts, we present only a summary here. See D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc., 433 F. Supp. 3d 227, 230 (D.N.H. 2020)

---

[1] In its opening brief, Sweetwater also challenged the district court's denial of Sweetwater's motion in limine seeking to limit D'Pergo's recoverable profits to the three-year period preceding the filing of this lawsuit. But after the Supreme Court's decision in Warner Chappell Music, Inc. v. Nealy, 601 U.S. ___, 144 S. Ct. 1135 (2024), Sweetwater notified the court that it "withdraws the portion of its cross-appeal seeking to limit the infringing profits period in the event of a new trial."

("D'Pergo I"); D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc., 561 F. Supp. 3d 114, 117-20 (D.N.H. 2021) ("D'Pergo II").

D'Pergo makes and sells customized electric guitars. In 2003, Stephan Dapergolas, D'Pergo's owner, posted a photograph, which he took, of D'Pergo's guitar necks and headstocks to D'Pergo's website.[2] The website displayed Dapergolas's photo from 2003 until 2007, when D'Pergo uploaded a professional photo in its place.

Sweetwater sells guitars on its website. Although Sweetwater does not sell D'Pergo guitars, Dapergolas's photo of the D'Pergo guitar necks and headstocks was uploaded to Sweetwater's website in 2004. The photograph appeared on a page of Sweetwater's website titled "Electric Guitar Buying Guide" in a section titled "Guitar necks explained." At the end of the guide, a heading titled "Shop for Electric Guitars" links back to Sweetwater's main website, and a section titled "Check Out These Great Products" advertises certain guitars for sale.

In January 2015, Dapergolas discovered that Sweetwater's guide used his photo. He then applied for and received a copyright registration for the photo. In January 2016, he told Sweetwater that the photo on its website was his, and Sweetwater immediately

---

[2] A guitar's "headstock" is located at the top of the guitar's neck and connects the guitar's tuning keys to its strings.

removed it from its website.[3]  D'Pergo also trademarked its headstock design depicted in the photo later that year.

In December 2017, D'Pergo brought this lawsuit.  Ruling on the parties' cross-motions for summary judgment, the district court granted summary judgment to Sweetwater on the trademark claim and to D'Pergo on the copyright claim.  D'Pergo I, 433 F. Supp. 3d at 235, 237.  The court then held a jury trial on the copyright damages and, simultaneously, a bench trial on D'Pergo's CPA claim.  The jury awarded $74,360 in actual damages to D'Pergo but did not award any infringing profits, and the district court found in favor of Sweetwater on the CPA claim.  D'Pergo II, 561 F. Supp. 3d at 116-17 & n.1.

These appeals followed.

## II. D'PERGO'S APPEAL

### A. CPA Claim

D'Pergo first appeals the district court's judgment in favor of Sweetwater on D'Pergo's CPA claim following the conclusion of a bench trial.  "Where a district court conducts a bench trial and serves as the factfinder, we review its factual findings for clear error."  Sawyer Bros., Inc. v. Island Transporter, LLC, 887 F.3d 23, 29 (1st Cir. 2018).  We review its legal determinations

---

[3] Upon investigation, Sweetwater discovered that a former employee had put the photo into the guide, but it was unable to determine the identity of that employee or why the employee had used the photo in the guide.

- 5 -

de novo.  N. Ins. Co. of N.Y. v. Point Judith Marina, LLC, 579 F.3d 61, 67 (1st Cir. 2009).

The CPA provides that it is "unlawful" to use "any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within" New Hampshire. N.H. Rev. Stat. Ann. § 358-A:2.  The statute sets forth a non-exclusive list of such methods, acts, and practices.  See id. In addition, a plaintiff making a CPA claim must show that the defendant's conduct involved "a degree of knowledge or intent." Kelton v. Hollis Ranch, LLC, 927 A.2d 1243, 1246 (N.H. 2007).

D'Pergo alleged that Sweetwater violated section 358-A:2, V.  See D'Pergo II, 561 F. Supp. 3d at 121.  That subsection provides that an unfair method of competition or deceptive act or practice can include "[r]epresenting that goods or services have sponsorship, [or] approval . . . that they do not have" or that "a person has a sponsorship, approval . . . or connection that such person does not have."  § 358-A:2, V; see also § 358-A:1, I (defining "[p]erson" to include "corporations"). Here, D'Pergo alleged that Sweetwater's use of the photo misrepresented that Sweetwater was affiliated with D'Pergo. D'Pergo II, 561 F. Supp. 3d at 121.

The district court found that D'Pergo had not proved its CPA claim because (1) reasonable consumers would not understand Sweetwater's use of the photo to indicate an affiliation with

D'Pergo; and (2) even if they would, Sweetwater had not acted with the intent required by the CPA. Id. at 122. Because we conclude that the second finding was supported by the evidence and not based on any mistake of law, we do not examine the district court's first finding.

A plaintiff can meet the section 358-A:2, V intent requirement by showing that the defendant made the representation at issue with "actual knowledge of its falsity or reckless disregard for its truth, with the intent to induce [consumers]" to enter into a transaction. Brace v. Rite Aid Corp., No. 10-cv-290, 2011 WL 635299, at *3 (D.N.H. Feb. 14, 2011). By contrast, defendants who made a "good faith mistake" are not liable under the CPA. Kelton, 927 A.2d at 1246.

The district court found that Sweetwater did not intend to mislead consumers with the photograph; rather, its use of the photo was "largely inadvertent." D'Pergo II, 561 F. Supp. 3d at 122. The employee who posted the photo, the court determined, merely "wanted a photograph of guitar necks for the Guide." Id. at 123. And no one else at Sweetwater had realized the photo was D'Pergo's until D'Pergo contacted Sweetwater in January 2016, at which point Sweetwater immediately removed the photo. Id. at 122-23.

D'Pergo asserts that the district court "overstated" the CPA's intent requirement when it held that D'Pergo failed to

prove that Sweetwater acted with the intent required for a CPA violation. But the court made no such mistake. It concluded that Sweetwater's use of the photo was "largely inadvertent," id. at 122, and thus D'Pergo did not show that Sweetwater acted with "reckless disregard" for the truth, id. (citation omitted). The only countervailing evidence to which D'Pergo points is the testimony from its photography expert, Jeffrey Sedlik, that Sweetwater "made numerous changes to the [photo] and failed to provide proper attribution, which in [Sedlik's] professional opinion confirmed that Sweetwater['s] copying . . . was intentional." Sedlik's testimony, however, concerned the unknown employee's actions and does not contradict the district court's conclusions. The court reasonably concluded that the employee simply wanted a photo of guitar necks and that, other than a lone employee, no one at Sweetwater was aware of the photograph's true origin until D'Pergo alerted Sweetwater. Id. at 122-23. We thus affirm the district court's judgment in favor of Sweetwater on D'Pergo's CPA claim.

## B. Trademark Claim

D'Pergo next challenges the district court's grant of summary judgment to Sweetwater on D'Pergo's trademark claim. We review a district court's grant of summary judgment de novo. Murray v. Kendred Nursing Ctrs. W. LLC, 789 F.3d 20, 25 (1st Cir. 2015).

In granting Sweetwater's summary-judgment motion, the district court reasoned that, because the D'Pergo headstocks were protectable as trade dress, they were not protectable as a trademark and that D'Pergo had waived any trade-dress claim. See D'Pergo I, 433 F. Supp. 3d at 234-35. On appeal, D'Pergo does not dispute that it waived any trade-dress claim but contends that the court erred in holding that D'Pergo's registered headstock shape was only protectable as trade dress -- in other words, that the court erred in holding that a viable claim of trade dress precludes a claim of trademark.

Notably, Sweetwater does not defend the district court's rationale on appeal.[4] And, indeed, there is at least some overlap between trade-dress and trademark protections. Generally speaking, "trade dress" refers to the packaging of a product or to any combination of elements by which "a product or service is presented to the buyer." J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8.1 (5th ed. 2024). But an item can be protectable as a trademark even if it is also protectable as trade dress. See In re Forney Indus., Inc., 955 F.3d 940, 945 (Fed. Cir. 2020) ("Trade dress is registrable as a trademark if it serves the same source-identifying function as a

---

[4] That is not to say, however, that Sweetwater waived this argument. Because Sweetwater is the appellee, it need not raise all possible grounds for affirmance in its briefs. See Ms. S. v. Reg'l Sch. Unit 72, 916 F.3d 41, 48-49 (1st Cir. 2019).

trademark."); McCarthy, supra, § 8.7, n.1. Thus, the district court was wrong to rely on that ground to reject D'Pergo's trademark claim.

Nevertheless, Sweetwater contends that the district court was correct to reject D'Pergo's trademark claim because D'Pergo itself "invited" the error. See Orenstein v. United States, 191 F.2d 184, 193 (1st Cir. 1951) ("An appellant will not ordinarily be permitted to complain of an error which he himself invited . . . ."). But D'Pergo did not invite any such error. Sweetwater points to only one discovery response, in which D'Pergo resisted Sweetwater's requests for evidence of the headstock's "secondary meaning" by stating that the trademark claims were "not trade dress claims." That statement is not an assertion that whatever is protectable as trade dress is not protectable as trademark. For example, a plaintiff might explain that it is asserting a due process claim under the U.S. Constitution and not under the relevant state constitution. By doing so, the plaintiff does not invite the defendant to argue that, because the plaintiff makes out a viable state due process claim, the federal due process claim fails.

Sweetwater also advances an alternative ground for affirmance. Even if the district court's analysis was faulty, Sweetwater argues, a reasonable jury still could not have ruled

for D'Pergo on the trademark claim.[5]  To prevail on a trademark claim, a plaintiff must show that (1) "its mark is entitled to trademark protection"; and (2) "the allegedly infringing use is likely to cause consumer confusion." Bos. Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12 (1st Cir. 2008).  And, according to Sweetwater, D'Pergo did not establish a genuine issue of fact on either element.  We disagree.

Because it presents a more straightforward question, we begin with the second element.  "Likely confusion" is "more than the theoretical possibility of confusion."  Id. (quoting Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 200 (1st Cir. 1996)).  To determine if that standard is met, courts examine "the similarity of the marks; the similarity of the goods; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; the defendant['s] intent in adopting its mark; and the strength of the plaintiff's mark."  Pignons S.A. de

---

[5] Although Sweetwater purports to root this argument in the harmless-error doctrine, we think it is most persuasively understood as a request to exercise our discretion to "affirm . . . on any independently sufficient ground supported by the record." Ward v. Schaefer, 91 F.4th 538, 544 n.3 (1st Cir. 2024) (quoting United States v. Nivica, 887 F.2d 1110, 1127 (1st Cir. 1996)). But the framing of Sweetwater's argument is ultimately immaterial because, for the following reasons, a reasonable jury could find for D'Pergo on the trademark claim.

Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981). Of those factors, "evidence of actual confusion is 'often deemed the best evidence of possible future confusion.'" Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 120 (1st Cir. 2006) (quoting Attrezzi, LLC v. Maytag Corp., 436 F.3d 32, 40 (1st Cir. 2006)).

Here, there was testimony at trial that at least three people -- Kamran Khan, Jesse Lee Guanyu, and an audience member at Julien Kasper's concert -- were confused when they saw D'Pergo's photograph on Sweetwater's website. D'Pergo II, 561 F. Supp. 3d at 118-19 & n.4. The district court discredited such testimony -- either explicitly or implicitly -- for valid reasons when ruling on D'Pergo's CPA claim. See id. at 118-19, 121. But a reasonable jury may not have done the same. Thus, D'Pergo's evidence creates a genuine issue on the first element.

That leaves us with the more difficult question of whether a reasonable jury could find that D'Pergo's mark was entitled to trademark protection. "A mark is entitled to trademark protection if it is capable of functioning as a source-identifier of goods." Bos. Duck Tours, 531 F.3d at 12. Trademark law has traditionally grouped marks into one of five categories based on their degree of capability in that regard. Id. Those categories are, from least to most distinctive: (1) generic marks, (2) descriptive marks, (3) suggestive marks, (4) arbitrary marks, and

(5) fanciful marks. Id. Generic marks never receive trademark protection. Id. at 13-14. Descriptive marks are entitled to trademark protection when a plaintiff shows that they have some "secondary meaning" -- that is, when "a substantial portion of the consuming public associates [the trademark] specifically with [the plaintiff's] business." Flynn v. AK Peters, Ltd., 377 F.3d 13, 20 (1st Cir. 2004) (quoting Bos. Beer Co. v. Slesar Bros. Brewing Co., 9 F.3d 175, 182 (1st Cir. 1993)). Suggestive, arbitrary, and fanciful marks are "inherently distinctive," and a plaintiff does not need to prove that those marks have some secondary meaning. Bos. Duck Tours, 531 F.3d at 12-13.

Nevertheless, several courts have observed that the five categories of distinctiveness are not particularly useful for non-word designations, like D'Pergo's headstock design. See McCarthy, supra, § 11:2, n.19 (collecting cases). And the parties dispute whether D'Pergo's trademark is inherently distinctive or is instead a product design that always requires proof of secondary meaning. See Wal-Mart Stores, Inc. v. Samara Bros., 529 U.S. 205, 216 (2000).

For present purposes, we can assume, without deciding, that D'Pergo was required to prove secondary meaning because its proof narrowly creates a genuine issue on that score. D'Pergo correctly points out that actual confusion is evidence of secondary meaning. See Am. Sci. Chem., Inc. v. Am. Hosp. Supply Corp., 690

- 13 -

F.2d 791, 793 (9th Cir. 1982). And, as mentioned above, D'Pergo introduced testimony from at least three people who were confused by Sweetwater's use of D'Pergo's headstock design. See D'Pergo II, 561 F. Supp. 3d at 118-19 & n.4. Further, although the district court concluded that non-D'Pergo guitars and D'Pergo guitars had "substantially similar shapes, curvatures, and size, among other characteristics," it noted that "several of D'Pergo's witnesses testified that a person with knowledge of guitars can discern a guitar's brand merely by the shape of its headstock." Id. 121-22.

Sweetwater urges us to follow our 2004 decision in Flynn v. AK Peters, Ltd., which it claims establishes that evidence of a few people in a field recognizing a mark is not enough to create a material issue about a mark's secondary meaning. See 377 F.3d at 22. In Flynn, an author asserted a trademark claim based on the use of her name on a book without her consent. Id. at 18. At summary judgment, she had submitted a curriculum vitae and an affidavit in which she stated that she had worked in the robotics field since 1985, had given 70 invited talks, had written 29 papers in the field, and had founded a company designing micro robots. Id. at 18, 20-21. But we discounted such evidence, noting that testimony by a party is self-serving and does not speak to whether an average consumer of the book at issue would be aware of her name. Id. at 21. She had also stated in her affidavit that "a handful of strangers" had approached her and told her that they

recognized her from a talk or that they had read her book; and her nephew in an affidavit said that a robotics graduate student told to him that his aunt was "famous." Id. But we concluded that "such limited anecdotal evidence" at most showed that "a handful of individuals in the [robotics] field have recognized her name and face," but not that "the relevant consumers have associated her name with a product." Id. at 21-22.

Here, although we agree with Sweetwater that D'Pergo's showing of secondary meaning was minimal, D'Pergo's evidence was more relevant than the author's in Flynn. D'Pergo put forth the testimony of three consumers from the relevant market, who had been on Sweetwater's website and seen the photo containing the headstock design. That was enough (if barely) to create a genuine issue as to whether D'Pergo's mark was entitled to trademark protection. Accordingly, we reverse the court's grant of summary judgment to Sweetwater on D'Pergo's trademark claim, albeit with some reluctance given the wispiness of the evidence that D'Pergo advanced in the district court.

## C. Infringing Profits: Burden of Proof

D'Pergo next challenges the substantive content of the district court's jury instruction concerning D'Pergo's burden of proof to recover infringing profits for Sweetwater's copyright infringement.

In reviewing a challenge to a jury instruction, we

- 15 -

"consider[] the big picture, asking whether the charge in its entirety -- and in the context of the evidence -- presented the relevant issues to the jury fairly and adequately."  Goodman v. Bowdoin Coll., 380 F.3d 33, 47 (1st Cir. 2004).  We generally review the instruction de novo, with certain exceptions not relevant here.  See id.  "An erroneous jury instruction warrants a new trial if 'the preserved error . . . can fairly be said to have prejudiced the objecting party.'"  Id. (quoting Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 135 (1st Cir. 1997)).

D'Pergo proposed an instruction reading:  "Once D'Pergo presents evidence of Sweetwater's gross revenues, there is a rebuttable presumption that all of those gross revenues are entirely attributable to the infringement, and the burden shifts to Sweetwater to establish what portion of its gross revenues were attributable to factors other than the photograph."  The district court rejected that instruction, and instructed the jury instead as follows:

> You may make an award of the defendant's profits only if you find that the plaintiff showed a causal relationship between the defendant's infringement and the defendant's revenues that are attributable to the infringement.  If you conclude that the plaintiff has not shown a causal relationship between the defendant's infringement and the defendant's revenues, you may not award any of the defendant's profits to the plaintiff.
>
> The plaintiff can establish the required causal relationship by showing that the

- 16 -

defendant profited from the use of the photograph. In other words, the plaintiff can seek to establish that the photograph helped the defendant sell its products, and that the defendant did sell its products as a result of the photograph. The plaintiff need not establish that any particular consumer bought a guitar because of the infringing photograph.

D'Pergo contends that requiring it to demonstrate a "causal relationship" overstated its burden and is inconsistent with our precedent. We agree.

The Copyright Act provides that

[t]he copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b). Courts have rejected a "highly literal interpretation" of § 504(b), On Davis v. The Gap, Inc., 246 F.3d 152, 160 (2d Cir. 2001), because, read literally, "[a] plaintiff in a copyright action against a multi[-]division, multi-product company such as General Mills, would need to do nothing more than offer an overall gross revenue number -- like $11.5 billion -- and sit back," Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 711 (9th Cir. 2004). Thus, many circuits have concluded that a

- 17 -

plaintiff must show <u>some</u> relationship between the infringement and the revenue figure presented but have described that relationship using different terminology. See <u>On Davis</u>, 246 F.3d at 160 ("reasonably related"); <u>William A. Graham Co.</u> v. <u>Haughey</u>, 646 F.3d 138, 141 (3d Cir. 2011) ("causal nexus"); <u>Bonner</u> v. <u>Dawson</u>, 404 F.3d 290, 294 (4th Cir. 2005) ("reasonably related"); <u>Powell</u> v. <u>Penhollow</u>, 260 F. App'x 683, 686 (5th Cir. 2007) ("As the copyright owner, Powell bears the burden of putting on evidence of Defendants' gross revenue attributable to the infringement."); <u>Thoroughbred Software Int'l, Inc.</u> v. <u>Dice Corp.</u>, 488 F.3d 352, 360 (6th Cir. 2007) (same); <u>Andreas</u> v. <u>Volkswagen of Am., Inc.</u>, 336 F.3d 789, 796 (8th Cir. 2003) ("nexus"); <u>Polar Bear</u>, 384 F.3d at 711 ("legally significant relationship"); <u>Univ. of Colo. Found., Inc.</u> v. <u>Am. Cyanamid Co.</u>, 196 F.3d 1366, 1375 (Fed. Cir. 1999) ("connection").

Sweetwater contends that these different standards are, in essence, the same. That may be true as to some. But we discern a real difference between requiring a "causal relationship," as the district court did here, and requiring, for example, a "reasonable relationship."

We are not starting from scratch in determining what standard we should apply. In <u>Data General Corp.</u> v. <u>Grumman Systems</u>

Support Corp., 36 F.3d 1147 (1st Cir. 1994),[6] we explained that "the plaintiff must meet only a minimal burden of proof in order to trigger a rebuttable presumption that the defendant's revenues are entirely attributable to the infringement" and that "the burden then shifts to the defendant to demonstrate what portion of its revenues represent profits, and what portion of its profits are not traceable to the infringement." Id. at 1173 (emphasis added). Thus, we noted that the plaintiff there had met its burden by demonstrating "that, of [the defendant's] gross revenue" from the relevant time period, "$5.4 million consisted of business eliminated from the calculation of [plaintiff's] lost profits." Id. at 1152, 1155, 1174. And we further stated that the "rebuttable presumption of causation" is a presumption as to "cause-in-fact and proximate cause" and that "[t]he defendant's burden under the apportionment provision of Section 504(b) is primarily to demonstrate the absence of a causal link between the infringement and all or part of the profits claimed by the plaintiff." Id. at 1175.

It would be odd to describe the plaintiff's burden as "minimal" and the defendant's burden as one of disproving a presumption of causation if in fact that minimal burden was to demonstrate a causal relationship between gross revenues and the

---

[6] Data General was abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010).

- 19 -

infringement.  Instead, we hold that "the minimal burden" described in Data General is akin to proof of a "reasonable relationship." That standard is more consistent with § 504(b), which, as noted, read literally, only requires that the profits be attributable to the infringement.[7]

Accordingly, the district court's jury instruction conflicted with our precedent.  We must remand, then, if the instructional error "may have unfairly affected the jury's

---

[7] Nor do we agree with Sweetwater that we implicitly overruled Data General in Jane Doe No. 1 v. Backpage.com, LLC, 817 F.3d. 12 (1st Cir. 2016).  There, a sex-trafficking victim sued an owner of a website selling online classified advertisements for infringement of her photograph, which had been posted on the website by her trafficker.  Id. at 16-17, 28.  We affirmed the dismissal of her complaint, noting that "a generalized assertion that a publisher/infringer profits from providing customers with the option to display photographs in advertisements, standing alone, [could not] plausibly be said to link the display of a particular image to some discrete portion of the publisher/infringer's profits."  Id. at 28.  Sweetwater points to language in Backpage describing the plaintiff's burden as a burden to demonstrate a "link," and to our citation to Mackie v. Rieser, a case decided by the Ninth Circuit, which requires a "causal link" between the revenues and the infringement element.  Backpage, 817 F.3d at 28-29 (citing Mackie v. Rieser, 296 F.3d 909, 914-16 (9th Cir. 2002)).

But the plaintiff in Backpage would not have satisfied any of the standards at issue -- whether the "reasonable relationship" or "causal relationship" standard, or another -- and thus the precise version of that test was not relevant to the disposition of the case.  Moreover, although we used the word "link," we did not use the phrase "causal link," and we cited parenthetically to Mackie because of its analogous facts; it, too, had involved an infringing photograph in an advertising brochure.  See id. at 28-29 (describing parenthetically Mackie's analogous facts and disposition).  Thus, Backpage did not implicitly overrule Data General.

conclusion[]." Allen v. Chance Mfg. Co., 873 F.2d 465, 470 (1st Cir. 1989) (emphasis added).

Although we suspect that the instruction would not have made a difference in this case, we cannot be sure. Some customers testified that they purchased guitars from Sweetwater after first viewing the guide containing the photo. A reasonable juror, then, could have viewed revenue from Sweetwater's online sales of electric guitars and guitar accessories (which D'Pergo's expert purported to further narrow to represent only those sales made to customers who had viewed the guide before making their purchases) as reasonably related to the infringing use of D'Pergo's photo. And, on this record, it is not clear whether the jury awarded D'Pergo zero infringing profits because it concluded that D'Pergo had not proved a causal relationship -- which, for the reasons explained above, would be problematic -- or because it concluded that Sweetwater's net profits discussed at trial were attributable to factors other than the infringement. Therefore, despite our doubts that the jury will reach a different result, we remand for a new trial as to infringing profits with an instruction reflecting Data General's reasonable-relationship requirement.[8]

---

[8] We note, for purposes of remand, that we nevertheless believe that the district court was correct to refuse to give the jury instruction that D'Pergo had proposed, which erroneously suggested that the plaintiff need not show any relationship at all between revenues and the infringement and is therefore also inconsistent with our caselaw.

## D. Infringing Profits: Commingling

D'Pergo also contends that the district court erred in refusing to give its requested instruction on "commingling." That instruction read as follows:

> To recover defendant's profits when the defendant has combined infringing and noninfringing elements into one work, the plaintiff need demonstrate only a reasonable relationship between the work as a whole and defendant's profit, not between the specific infringed element and defendant's profit.

Where the district court refuses to give an instruction, "we review that issue de novo . . . reversing only if the rejected instruction was [1] substantively correct, [2] essential to an important issue in the case, and [3] not substantially covered in the charge given." Rodríguez v. Señor Frog's de la Isla, Inc., 642 F.3d 28, 36 (1st Cir. 2011) (citations omitted).

Because we conclude that D'Pergo's requested instruction was not substantively correct and that, in any event, the correct law was substantially covered in the charge given, we affirm the district court's refusal to give the requested instruction.

In Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390 (1940), the Supreme Court clarified that "[w]here there is a commingling of gains" -- that is, where some but not all of the profits were due to the infringement -- "[the infringer] must abide the consequences, unless [it] can make a separation of the profits so as to assure . . . the injured party all that justly belongs to

him." Id. at 406 (emphasis added). D'Pergo claims that, under Sheldon, it needed only to show a relationship between the guide and the revenues, rather than between the infringing photo and the revenues. Thus, it argues, the district court's instruction that the jury needed to find a relationship between the photograph and the revenues was not sufficient. But that argument misconstrues Sheldon. The commingling referred to in Sheldon was the commingling of infringing and non-infringing profits -- not infringing and non-infringing elements of the offending work -- and refers to the defendant's burden to apportion such profits. Sheldon referred to a "commingling of gains," id., and Data General likewise explained that the burden-shifting rule is "an equitable response to an infringer who has frustrated the task of apportionment by co-mingling profits," 36 F.3d at 1176.

The plaintiff's burden, on the other hand, is to establish a relationship between the infringing element (here, the photograph) and the gross revenue figure it offers. Thus, D'Pergo's instruction, which stated that it only needed to demonstrate a relationship between the guide and the defendant's profits, is substantively incorrect.

And in any event, the charge given sufficiently covered Sweetwater's burden. Specifically, the district court addressed Sweetwater's burden by instructing the jury that "[t]he defendant has the burden of proving its non-infringing revenue by a

preponderance of the evidence"; that the defendant has "the burden of proving its expenses by a preponderance of the evidence"; and that the jury should "subtract non-infringing revenue[s]" which the court defined as "all the revenue defendant made from factors other than the infringement," and should "deduct expenses from the defendant's gross revenue that have a connection to the sale of products associated with the infringement." Those instructions accurately conveyed the concept of commingling gains to the jury.

The cases D'Pergo cites do not support its requested instruction. In Andreas v. Volkswagen of America, Inc., 336 F.3d 789 (8th Cir. 2003), the Eighth Circuit concluded that the jury had "enough circumstantial evidence to find that [a] commercial [for the TT coupe]" -- in which the copyrighted phrase of the plaintiff appeared -- "contributed to the profitable introduction of the TT coupe," and that the burden had then shifted to Audi to show "what effect other factors had on its profits." Id. at 791, 797. But the court in Andreas specifically found that the plaintiff had "met his burden of establishing a nexus between the infringement and Audi's sale of TT coupes." Id. at 798 (emphasis added). Thus, it is not true that the Eighth Circuit in Andreas only required the plaintiff to prove that the commercial, rather than the copyrighted phrase, contributed to the profitable introduction of the TT coupe.

The same is true of Frank Music Corp. v. Metro-Goldwyn-

- 24 -

Mayer, Inc., 772 F.2d 505 (9th Cir. 1985). D'Pergo contends that, in Frank, the Ninth Circuit discussed the "promotional value of the musical" -- which included five infringing songs of the plaintiff -- on hotel and gaming revenues, not "the promotional value of the songs to those revenues." But, in fact, it discussed at length why the songs themselves "contributed" to such revenues. See id. at 518.

In summary, we conclude that D'Pergo's proposed instruction was incorrect and that "commingling" properly understood was already covered by the other instructions. Accordingly, we affirm the district court's refusal to give the instruction.[9]

### III. SWEETWATER'S CROSS-APPEAL

We turn now to Sweetwater's cross-appeal on damages. Sweetwater asks us to vacate the actual damages awarded to D'Pergo for Sweetwater's copyright infringement because, in its view, that award rested on testimony of D'Pergo's photography expert, Sedlik,

---

[9] In response to a question from the jury as to whether they could substitute the word "[g]uide" for the word "photograph" in the "causal relationship" instruction, the district court told the jury that it must follow the instructions as given. D'Pergo, however, does not allege error on that basis alone; it points to the question as evidence that the commingling instruction was not covered by the other instructions. But because the district court was not obligated to provide the proposed commingling instruction here, we conclude that the court's response to the jury's question was substantively correct.

that the district court erroneously admitted.[10]

We review a district court's decision to admit expert testimony for abuse of discretion. First Marblehead Corp. v. House, 541 F.3d 36, 40 (1st Cir. 2008). The admissibility of such testimony is governed by Federal Rule of Evidence 702, which states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (2011) (amended 2023).[11] In applying Rule 702,

_____

[10] Although Sweetwater challenges the damages award, it asks that we do not order a new trial on damages because such a proceeding is "unnecessary." This request implicates weighty Seventh Amendment concerns. See Bisbal-Ramos v. City of Mayaguez, 467 F.3d 16, 26 (1st Cir. 2006) ("With regard to compensatory damages, an order entering 'judgment for a lesser amount than that determined by the jury without allowing petitioner the option of a new trial, cannot be squared with the Seventh Amendment.'" (quoting Hetzel v. Prince William Cnty., 523 U.S. 208, 211, (1998) (per curiam))). Yet, we do not address those concerns today because, for the following reasons, Sweetwater's cross-appeal fails on its merits.

[11] In December 2023, two years after the trial, Rule 702 was amended. In evaluating Sweetwater's claim of error, we apply the version of Rule 702 in effect at the time of the bench trial. See

a district court must principally determine whether the "expert's proffered testimony both rests on a reliable foundation and is relevant to the task at hand." Carrozza v. CVS Pharm., Inc., 992 F.3d 44, 56 (1st Cir. 2021) (cleaned up) (quoting Samaan v. St. Joseph Hosp., 670 F.3d 21, 31 (1st Cir. 2012)).

As summarized by Sweetwater, Sedlik testified that, based on his survey of images from stock photography licensing websites, an appropriate base license fee for the uses that Sweetwater made of the photo amounted to $31,669. However, he testified that that fee should be multiplied three to five times to account for the "scarcity" of the photograph, and then by five to ten times to account for the "competitive use" of the photograph.[12] When asked about his calculations, he at one point testified that he determined that the photo was scarce because "Sweetwater or its employee or contractor selected this photo for

_____

In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prods. Liab. Litig., 93 F.4th 339, 345 n.4 (6th Cir. 2024); In re Cooper Tire & Rubber Co., 568 F.3d 1180, 1186 n.4 (10th Cir. 2009). But we note that the 2023 amendments do not meaningfully affect our analysis. See Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

[12] While we understand that Sedlik's multipliers for scarcity and competitive use are intended to calculate the fair market value of a hypothetical license fee, we question whether Sedlik offered an adequate basis to substantiate the multipliers. For example, Sedlik offered no explanation -- beyond his own experience -- as to why the licensing fee of a scarce image should be multiplied three to five times, as opposed to some other numerical range. But because Sweetwater has not advanced this challenge to Sedlik's testimony, we do not address it.

- 27 -

a reason." He also testified as to scarcity that "Sweetwater's own selection and use of the photograph demonstrates the quality of the photograph." As to the competitive-use multiplier, he explained that he asked whether "[w]hen Mr. Dapergolas and Sweetwater are sitting at that negotiating table, [it would] be reasonable for Mr. Dapergolas to expect that he would be paid more because it's a competitive use than he would if it was a noncompetitive use." And he concluded that "in [his] opinion and in all of [his] experience, the answer is yes and that's entirely reasonable."

Sweetwater contends that Sedlik's testimony should have been excluded for two reasons. First, Sweetwater argues that Sedlik based his determination that the photo was scarce and used competitively on his "subjective belief or unsupported speculation." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 590 (1993). Second, Sweetwater argues that the testimony impermissibly relied on the parties' identities. By allowing testimony based on the parties' identities, Sweetwater claims, the court misapplied the so-called hypothetical transaction test. Under that test, damages for copyright infringement are measured by what a hypothetical, willing buyer and seller would have paid for a license. See On Davis, 246 F.3d at 170-72. "The question is not what the owner would have charged, but rather what . . . the fair market value [is]." Id. at 166. Sweetwater also asserts

- 28 -

that these erroneous identity references must have prejudiced the jury because the damages verdict of $74,360 was exactly five times Sedlik's base license fee of $14,872 for use of the photograph on a corporate website, meaning that the jury accounted for either scarcity or competitive use.

But neither the multipliers nor the references to the parties' identities require us to vacate the damages award. First, in explaining the methodology underlying the scarcity multiplier, he testified that he searched for images showing multiple guitar necks and found "none that showed [] the variety of guitar necks that are shown in [the photo]." He also found no other images showing "the variety of woods and designs of necks"; from there, he concluded that there "was no suitable alternative." Thus, he determined that the photo was a "rare or scarce image in the marketplace" and that "[r]are photographs typically demand somewhere between three and five times what a generic photograph would command for the exact same usage." In light of such explanations, the district court did not abuse its discretion in concluding that Sedlik's testimony was based upon "'sufficient facts or data' that result[ed] from the application of 'reliable principles and methods,'" First Marblehead Corp., 541 F.3d at 41 (quoting Fed. R. Evid. 702), and that Sweetwater's contentions to the contrary went to the weight of the evidence, rather than to its admissibility.

- 29 -

Our conclusion is bolstered by the fact that the Third Circuit has refused to overturn a jury award of actual damages under § 504(b) that encompassed Sedlik's multipliers under similar circumstances, concluding that Sedlik's multipliers were not punitive, but rather, were used to "calculate fair market value." See Leonard v. Stemtech Int'l Inc., 834 F.3d 376, 393 (3d Cir. 2016). Sweetwater attempts to distinguish Leonard on the basis that, there, the parties did not expressly challenge Sedlik's use of multipliers. The Third Circuit, however, did not rest its decision on waiver grounds; it merely noted that "there is a question" whether they had waived such a challenge. Id. at 392 n.13. Indeed, the Leonard court reasoned that because neither party had "asserted waiver," it would nevertheless "address [the] challenge to [his] use of a multiplier for scarcity and exclusivity." Id.

Second, the district court acted within its considerable discretion in determining that Sedlik did not impermissibly rely on the parties' identities because the hypothetical seller/buyer test permits some consideration of the relative positions of the parties. For example, in Jarvis v. K2 Inc., 486 F.3d 526 (9th Cir. 2007), the Ninth Circuit noted that "objective considerations of market value" included the testimony of a senior executive of the defendant company as to how much he would pay for images for different uses. Id. at 534. And in Bruce v. Weekly World News,

Inc., 310 F.3d 25 (1st Cir. 2002), we noted that "proof of industry practice" is crucial to the estimation of "actual damages," and credited the testimony of the defendant's expert that "Bruce almost surely would not have been able to negotiate with World News for anything other than a single, lump-sum, up-front licensing fee." Id. at 29-30.

Moreover, we think that the more reasonable reading of the testimony to which Sweetwater points is that Sedlik was using the parties' names as stand-ins for the hypothetical seller and buyer negotiating from a competitive standpoint. That is underscored by Sedlik's testimony, in general terms, about why counterparties might charge more for a license to a competitor, in which he gave as an analogy two rival shoe stores across the street from each other where "one shoe company wants to license the shoe photographs of its competitor." Indeed, Sedlik clarified that he was "not talking about the [parties'] specific identit[ies]" but was instead referring to "similarly situated entities."

Having looked at the photo and the seemingly small role it played on Sweetwater's website, it does seem rather mind boggling that anyone would pay $31,669 merely to license it, much less $74,360. Sedlik cites no example of any remotely similar market transaction, nor does he explain why a purchaser intending such an inconsequential use as here would consider paying that much for the photo rather than arranging and photographing on its

own a picture of guitar necks.  These concerns, however, are not developed enough on this record to have required the trial court to exercise its Rule 702 gatekeeping duty by barring the testimony.

Thus, Sweetwater has identified no error in the denial of its motion to exclude Sedlik's testimony and, subsequently, we affirm the actual damages awarded to D'Pergo on his copyright claim.

## IV. CONCLUSION

For the foregoing reasons, we **affirm in part**, **reverse in part**, and **remand in part**.  Specifically, we reverse the district court's grant of summary judgment on trademark infringement, and reverse and order a new trial on the issue of infringing profits for Sweetwater's copyright infringement.  As to all other issues, we affirm the district court.  The parties shall bear their own costs of appeal.